BERZON, Circuit Judge,
dissenting:
I respectfully dissent. The record reflects a disputed issue of material fact as to whether the right of first refusal offers (ROFRs) Equilon extended to Barja and Fry’s provided the recipients of the offers with an opportunity to purchase the same assets as the third party bidder, Apro, would acquire for the same price. A question remains whether, for the offer price, Apro was buying something that Barja and Fry’s were not. Summary judgment was therefore inappropriate.
The record indicates that if Apro purchased the franchisees’ stations from Equi-lon, it would acquire not only the land, improvements, and equipment at each station site, but also the right to supply the stations with fuel, as the exclusive wholesale distributor, for at least ten years. In contrast, the record suggests that if Barja and Fry’s exercised their rights of first refusal and purchased their respective stations at the prices identified by Apro, they would obtain no such wholesale distribution rights, only the station property and its accouterments.
Specifically, the record permits an inference that there was a value attributed to the acquisition of the fuel supply rights, independent of the station property, and that Apro was required to, and did, include that value in its overall bulk bid as well as in the portions of the bulk bid attributed to Barja’s and Fry’s respective stations. *543 Thus, contrary to the majority’s suggestion, the value Apro placed on the fuel supply rights may not have simply reflected its ability to extract greater profit from the stations than the franchisees could. If in fact Apro acquired and paid separately for the distribution rights as part of the same transaction in which it acquired the real estate and equipment, then Apro did not just “come to the table with [a] different hand[ ],” Keener v. Exxon Co., U.S.A., 32 F.3d 127, 132 (4th Cir. 1994), based on “preexisting or planned commercial relationships that g[a]ve it certain advantages in acquiring a franchise on a particular site,” Forty-Niner Truck Plaza, Inc. v. Union Oil Co., 58 Cal.App.4th 1261, 1282, 68 Cal.Rptr.2d 532 (1997) (emphasis added). Instead, if that turns out to be so, then Apro purchased a commercial relationship with Equilon — that of an exclusive, wholesale distributor of Shell gasoline — as part of its bulk acquisition of the franchises in the Los Angeles area; the supply rights were an asset for which Apro was paying; and the value of those rights was reflected in the purchase price for each station, on which the ROFRs were based. As the record facts give rise to these permissible inferences, summary judgment should not have been granted, and we should be reversing for trial.
That the individual station valuations were apparent from the face of Apro’s bulk bid and that there was no evidence of price manipulation do not detract from that conclusion. Those circumstances are necessary but not sufficient conditions to demonstrate compliance with California Business & Professions Code § 20999.25. The California statute, like its federal counterpart, the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 et seq., provides that a franchisee must have a bona fide opportunity to purchase from the franchisor the same interests in the premises as are on offer to a third party purchaser. See Forty-Niner, 58 Cal.App.4th at 1266, 1273-74, 68 Cal.Rptr.2d 532. And it remains unclear on the present record whether that fundamental requirement was met here.
Accordingly, I would reverse the district court’s grant of summary judgment in favor of Equilon.